**Richard Leslie SCHRIER, Appellant,**

v.

**Sally HALFORD; Charles Lee, Appellees.**

No. 94–3262.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1995.

Decided July 27, 1995.

---

Patrick E. Ingram, Iowa City, IA, argued, for appellant.

Kristin Wright Ensign, Asst. Atty. Gen., argued. Also appearing on the brief was Suzie A. Berregaard Thomas, Asst. Atty. Gen., Sp. Litigation Div., for appellees.

Before McMILLIAN, FAGG and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Richard Schrier brought this action in the United States District Court[1] for the Southern District of Iowa, pursuant to 42 U.S.C. § 1983, claiming that Iowa corrections officials, Sally Halford and Charles Lee, deprived him of his constitutional right of meaningful access to the courts. Plaintiff now appeals the district court's final order granting defendants' motion for summary judgment and denying his cross-motion for summary judgment. *Schrier v. Halford*, No. 4–93–CV–80396 (S.D.Iowa July 5, 1994) (order). For reversal, plaintiff argues, among other things, that the district court erred in holding, as matters of law, that (1) plaintiff's right of access to the courts does not extend to his pursuit of legal malpractice and related civil claims, and (2) he was afforded meaningful access to the courts in his postconviction proceedings by the appointment of counsel. For the reasons discussed below, we affirm.

## Background

Plaintiff is an Iowa inmate currently imprisoned in Missouri pursuant to the Interstate Corrections Compact.[2] He filed this § 1983 action in May 1993 alleging that defendants unlawfully denied him access to the courts by refusing to provide him with Iowa law books and other legal materials. More specifically, he claims that defendants' system of providing legal materials only if they are requested by specific citation (exact citation system) denied him meaningful access to the courts in his postconviction relief proceedings and in his effort "to pursue civil suits based on, essentially, ineffective assistance and other matters related to the conduct of his criminal defense and prosecution." Brief for Appellant at 6. Following a hearing on the parties' cross-motions for summary judgment, the district court entered a written order granting defendants' motion and denying plaintiff's motion. Plaintiff appealed.

## Discussion

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 699 (8th Cir.1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir.1990).

---

**1.** The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa.

**2.** Plaintiff was convicted of first degree murder and sexual abuse in 1980. His conviction was affirmed on direct appeal, *State v. Schrier*, 300

N.W.2d 305 (Iowa 1981). He has been denied both state postconviction relief, *Schrier v. State*, 347 N.W.2d 657 (Iowa 1984), and federal habeas relief. *Schrier v. State*, 941 F.2d 647 (8th Cir. 1991).

In the present case, defendants moved for summary judgment arguing, among other things, that the undisputed evidence showed that defendants had provided plaintiff access to legal materials and that plaintiff had failed to show that he had been prejudiced by defendants' actions. In opposition to defendants' motion for summary judgment, and in support of his cross-motion, plaintiff argued, among other things, that defendants' exact citation system did not provide meaningful access to the courts and that he was not required to show prejudice resulting from defendants' actions. Without consideration of any of the disputed facts in the case, the district court considered the scope of the right of access to the courts and concluded, as matters of law, that (1) the right did not extend to plaintiff's malpractice and related civil claims and (2) plaintiff was afforded meaningful access to the courts in his post-conviction proceedings by the appointment of counsel. Slip op. at 4–7. Upon *de novo* review, we consider whether the district court erred in its legal determinations.

*Plaintiff's civil malpractice and related claims*

■ The constitutional right of access to the courts has been firmly established in Supreme Court case law. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (*Bounds* ); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). In *Bounds,* the Supreme Court held that the states have an affirmative duty to assure prisoners access to the courts that is "adequate, effective, and meaningful." 430 U.S. at 822, 97 S.Ct. at 1495.[3] The Supreme Court further held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498.

In the present appeal, plaintiff first challenges the district court's holding that defendants are not constitutionally required to provide him with an adequate law library or its legal equivalent to assist him in pursuing his legal malpractice and related civil claims. The district court held that the constitutional right to receive such affirmative assistance does not extend to legal proceedings other than those specifically recognized in *Bounds.* In *Bounds,* the Supreme Court expressly noted that prisoners must be afforded meaningful access in their criminal trials, *id.* at 825, 97 S.Ct. at 1496 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)), on their appeals as of right, 430 U.S. at 823, 825, 97 S.Ct. at 1495, 1496 (citing *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963)), and in their habeas and civil rights actions, 430 U.S. at 821–28, 97 S.Ct. at 1494–98 (citing *Johnson v. Avery,* 393 U.S. at 485, 89 S.Ct. at 748; *Wolff v. McDonnell,* 418 U.S. at 579, 94 S.Ct. at 2986). In holding that the right to affirmative assistance applies in these contexts, the Supreme Court explained "[w]e are concerned in large part with original actions seeking new trials, release from confinement, or vindication of fundamental civil rights.... [H]abeas corpus and civil rights actions are of 'fundamental importance ... in our constitutional scheme' because they directly protect our most valued rights." *Bounds,* 430 U.S. at 827, 97 S.Ct. at 1497 (quoting *Johnson v. Avery,* 393 U.S. at 485, 89 S.Ct. at 748).

As noted by the district court, however, neither the Supreme Court nor this court has comprehensively addressed the issues of whether, or to what extent, the right to affirmative legal assistance from the states must be afforded in proceedings beyond those recognized in *Bounds.* Slip op. at 4, 6.

---

3. Although "[t]he Court's opinion in *Bounds* is silent as to the source of [the right of access to the courts], ... on other occasions the Supreme Court has said variously that it is founded in the Due Process Clause of the Fourteenth Amendment, ... or the Equal Protection Clause, ... or

the First Amendment right to petition for a redress of grievances." *Knop v. Johnson,* 977 F.2d 996, 1002 (6th Cir.1992) (*Knop* ) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993).

The district court considered cases from other federal courts of appeals and concluded that the better reasoned approach, and that which would more likely be adopted by the Supreme Court if faced with the issue, would be *not* to extend the right to receive such affirmative assistance from the states beyond the boundaries of *Bounds.* Thus, the district court held as a matter of law that the Constitution does not require the states to provide a law library, or its legal equivalent, to inmates pursuing general civil claims arising only under state law. Slip op. at 4–6. We agree.

The district court was persuaded by the Sixth Circuit's reasoning in *John L. v. Adams,* 969 F.2d 228, 235–36 (6th Cir.1992) (*John L.*), and *Knop v. Johnson,* 977 F.2d 996, 1002–09 (6th Cir.1992) (*Knop* ), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). In *John L.,* the Sixth Circuit noted that, in all types of civil actions, "states may not erect barriers that impede the right of access of incarcerated persons." 969 F.2d at 235. This principle is entirely consistent with *Bounds,* which deals with the states' affirmative duty to provide legal assistance, not the prohibition against imposing unreasonable barriers. From this principle, other courts have held that prison officials may not prohibit an inmate from giving or receiving legal assistance in general civil matters, *Corpus v. Estelle,* 551 F.2d 68, 70 (5th Cir.1977) (cited in *John L.,* 969 F.2d at 235), or deliberately hold mail that contains a prisoner's legal documents or correspondence, *Jackson v. Procunier,* 789 F.2d 307, 310–11 (5th Cir.1986) (cited in *John L.,* 969 F.2d at 235), or require a prisoner to obtain a court order before having access to a law library in order to pursue civil matters, *Straub v. Monge,* 815 F.2d 1467, 1470 (11th Cir.), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987) (cited in *John L.,* 969 F.2d at 235). *See also Smith v. Erickson,* 884 F.2d 1108 (8th Cir.1989) (prison policies refusing to supply necessary basic materials such as stamps, and requiring indigent prisoners to use envelopes purchased from the canteen for their legal mail, unconstitutionally impedes access to courts).

The Sixth Circuit further opined, however, that it would be "an unwarranted extension of the right of access" to require states to affirmatively assist prisoners on civil matters arising under state law. *John L.,* 969 F.2d at 235–36. In *Knop,* the Sixth Circuit reasoned,

> [i]t might be a good idea for the taxpayers ... to provide legal assistance for prisoners in all civil matters as to which a need can be demonstrated, just as it might be a good idea for the taxpayers to provide such assistance for the populace at large. Again, however, we return to the obvious truth that not every good idea is mandated by the Constitution.

977 F.2d at 1009. The *Knop* court thus went on to conclude that if a law-abiding citizen does not have a constitutional right of access to the public purse for legal assistance to pursue or defend all types of legal claims, certainly it should not be the case that such a constitutional right arises as a result of incarceration. *Id.; accord Nordgren v. Milliken,* 762 F.2d 851, 855 (10th Cir.) (addressing the extent to which the assistance should be carried out, "we should not hold that the right of access to the courts requires more than the assistance of counsel through completion of the complaint for a federal habeas or civil rights action"), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

We recognize that several of our sister circuits have generally stated that the right of meaningful access extends beyond habeas and civil rights actions; however, it is critically important to note that none of them have held that the types of *affirmative assistance* contemplated in *Bounds* is constitutionally guaranteed in actions that do not conform to the principles underlying *Bounds.* In *Eldridge v. Block,* 832 F.2d 1132 (9th Cir.1987), the Ninth Circuit held that the right of meaningful access to the courts extended to the plaintiff's efforts in opposing his extradition. In that case, however, the Ninth Circuit specifically noted that the plaintiff's claim that the defendants had violated the extradition statute stated a claim under § 1983. *Id.* at 1137–38. In *Straub v. Monge,* despite the Eleventh Circuit's general statement that the right of access extends

to all civil matters, 815 F.2d at 1470–71, the case was itself very limited in its facts. In that case, a pretrial detainee asserted the right of meaningful access to protect his property interests in a civil forfeiture action brought by the state to take an automobile he allegedly used in a bank robbery. Thus, not only was the civil forfeiture action quasi-criminal in nature, it was an original action in which the plaintiff was seeking to protect a fundamental civil right. *Id.* at 1474 (Hill, J., special concurrence); *see Bounds,* 430 U.S. at 827, 97 S.Ct. at 1497 ("[w]e are concerned in large part with original actions seeking ... vindication of fundamental civil rights"). Finally, both *Jackson v. Procunier* and *Corpus v. Estelle* involved the constitutional prohibition against state-imposed barriers to the courts, not the obligation of states to provide affirmative assistance in accessing the courts, as recognized in *Bounds.* In *Jackson v. Procunier,* 789 F.2d at 310–11, the Fifth Circuit held that a prison rule prohibiting prisoners from giving or receiving legal advice or assistance in civil matters was unconstitutional. In *Corpus v. Estelle,* 551 F.2d at 70–71, the Fifth Circuit held that the plaintiff had stated a constitutional claim of denial of access when he alleged that prison officials had deliberately stalled his legal mail, causing dismissal of an appeal from a judgment in a civil suit.

■ Upon *de novo* review of the novel legal issue presented in this case, we hold that, although the right of meaningful access to the courts ensures that prison officials may not erect unreasonable barriers to prevent prisoners from pursuing or defending all types of legal matters, prisoners do not have a constitutional right to receive affirmative assistance from prison authorities, in the form of access to a law library or appointment of a lawyer or law-trained assistant, to pursue or defend legal actions other than those conforming to the principles recognized in *Bounds.* Accordingly, we affirm the district court's holding that plaintiff is not entitled to the affirmative assistance he seeks from defendants to pursue his state court litigation alleging legal malpractice and other related civil claims arising under state law.

*Plaintiff's state court action for postconviction relief*

■ Plaintiff next argues that the district court erred in holding, on summary judgment, that he was afforded meaningful access to the courts in his postconviction proceedings by the appointment of counsel. Plaintiff argues that there are material issues of fact as to whether the appointment of counsel was, in this instance, "adequate," so as to afford him meaningful access to the courts. Plaintiff also argues that the district court erroneously required him to show that he had been prejudiced by the exact citation system employed by defendants. *See Hamm v. Groose,* 15 F.3d 110, 112 (8th Cir.1994) (unless inmates are completely denied access to the law library, they must assert actual injury or prejudice).

As we previously noted, *Bounds* provides that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. It is undisputed that plaintiff was appointed counsel to represent him in his postconviction proceedings. His claim now is that the assistance rendered by his appointed counsel was not "adequate." The district court held, and we agree, that "plaintiff's right to access is protected by the appointment of counsel." Slip op. at 7.

■ *Bounds* provides that, for certain legal proceedings including actions for postconviction relief, the right of meaningful access to the courts requires prison authorities *either* to provide prisoners with adequate law libraries *or* to provide them with adequate assistance from persons trained in the law. 430 U.S. at 828, 97 S.Ct. at 1498. In other words, the provision of adequate legal assistance satisfies this right and relieves the state from having to provide access to a law library or its equivalent. However, because the states are not constitutionally required to appoint counsel to indigent prisoners to pursue postconviction remedies, there is no constitutional right to effective assistance of counsel in this context. *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). We therefore conclude that, consistent with the constitutional

right asserted by plaintiff, namely, the right of meaningful access to the courts, the term "adequate," as used in *Bounds* to modify "assistance from persons trained in the law," refers not to the effectiveness of the representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel or other law-trained assistant. *See Quam v. Minnehaha County Jail,* 821 F.2d 522, 523 (8th Cir.1987) (per curiam) (§ 1983 plaintiff was afforded meaningful access to courts because he had regular access to his court-appointed attorney during the relevant time period); *Little v. Norris,* 787 F.2d 1241, 1244 (8th Cir.1986) ("If there is an adequate law library available or if there is assistance available from persons trained in the law, then the state has satisfied the inmates' right to meaningful access to the courts.").

In *Luce v. Magnusson,* 675 F.Supp. 681 (D.Me.1987), upon which plaintiff relies, a prisoner who had been transferred from Maine to Indiana brought a § 1983 action against Maine corrections officials. In that case, the district court denied the defendants' motion for summary judgment because the plaintiff had alleged he was unable to communicate with his court-appointed counsel by any means except the mails. In other words, he had alleged facts supporting his claim that he had been denied meaningful access to his attorney. The defendants failed to provide any evidence to the contrary. Thus, they failed to show that there were no genuine issues of material fact, and their motion for summary judgment was denied. *Id.* at 682–83. By contrast, in the present case, plaintiff's only complaint with respect to his state postconviction action is that he has "not received adequate assistance in the form of legal research that would enable [him] to bring postconviction actions challenging [his] criminal conviction." Appendix at 132 (affidavit of Richard Schrier). Plaintiff admits that he had appointed counsel to assist him in his postconviction proceedings. Moreover, he has never alleged any facts suggesting that his ability to communicate with his attorney was impaired or that his access to his attorney was otherwise inadequate. Thus, upon *de novo* review, we agree with the district court that there are no material facts in genuine dispute and defendants are entitled to judgment as a matter of law on plaintiff's claim that he has been denied meaningful access to the courts in his postconviction proceedings.

Having determined that plaintiff has failed to establish any legal basis for asserting a violation of his right of meaningful access to the courts, we need not address plaintiff's argument that defendants' exact citation system results in the type of complete denial of access to the courts contemplated in *Hamm v. Groose,* 15 F.3d at 112, which would relieve a prisoner from having to assert actual injury or prejudice. The order of the district court is affirmed.